721 So.2d 321 (1998)
DELTA CASUALTY COMPANY, Nationwide Mutual Fire Insurance Company, and Bankers Insurance Company, Appellants,
v.
PINNACLE MEDICAL, INC., etc., and M & M Diagnostics, Inc., et al., Appellees.
Nos. 97-1429, 97-1588 and 97-3093.
District Court of Appeal of Florida, Fifth District.
October 2, 1998.
Rehearing Denied November 12, 1998.
*322 Clay W. Schacht and Christopher S. Reed of Jack, Wyatt, Tolbert & Thompson, P.A., Maitland, for Appellants Delta Casualty Company and Nationwide Mutual Fire Insurance Company.
Brian D. DeGailler of Litchford & Christopher, Orlando, for Appellant Bankers Insurance Company, etc.
Harley N. Kane of Greenspan & Kane, Boca Raton, for Appellee Pinnacle Medical, Inc., etc.
Mark Tischhauser, Tampa, for Appellee M & M Diagnostics, Inc., et al.
EN BANC
DAUKSCH, Judge.
This is a consolidated appeal. Appellants, insurance companies, timely appeal the county court's orders denying their motions to dismiss and compel arbitration and declaring a portion of section 627.736(5), Florida Statutes (1995) to be unconstitutional as violative of Article I, Section 9 of the Constitution of the State of Florida. In Pinnacle Medical, Inc. v. Delta Casualty Co., the first case before the county court, the court certified the following question to be of great public importance:
Does the arbitration requirement of section 627.736(5) violate Article I, Section 9, of the Florida Constitution?
The county court's order in Delta sets forth the factual basis and the court's reasoning for declaring section 627.736(5) to be unconstitutional in each of these cases as follows:
In this action plaintiff, Pinnacle Medical, Inc. (Pinnacle) alleges that it provided medical treatment to Jacques Louis Raymond, who was injured in an automobile accident. Raymond was insured by a personal injury protection (PIP) insurance policy issued by defendant, Delta Casualty Co. (Delta). In return for his treatment, Raymond assigned his right to receive benefits under the policy to Pinnacle. Pinnacle submitted his medical bills to Delta, which refused to pay them. Pinnacle, as Raymond's assignee, now brings this action for breach of the insurance contract.
Delta asserts that this action must be referred to binding arbitration in accordance with section 627.736(5), Florida Statutes. Because the arbitration portion of that statute violates Article I, Section 9 of the Florida Constitution, that provision is unenforceable, and Delta's request to have the Court order this dispute to binding arbitration is denied.
The legislature has broad power to regulate business, especially the insurance business. See Hughes v. Professional Ins. Corp., 140 So.2d 340 (Fla. 1st DCA 1962)[sic]. Such legislation, however, must be reasonably related to a legitimate legislative objective. Lasky v. State Farm Ins. Co., 296 So.2d 9 (Fla.1974).
Most owners of a motor vehicle required to be registered in Florida must buy PIP insurance. § 627.733, Fla. Stat. Under the statutory PIP scheme, the insured is assured *323 of receiving certain medical, disability, and death benefits, but loses the common law right to sue a negligent party for those same damages. § 627.736(3), Fla. Stat. To further the purpose of the law, section 627.736(5) requires that a medical provider charge only a reasonable amount for services rendered to an insured and that those benefits are to be paid directly to the provider if the insured so directs on a form approved by the Department of Insurance. The issue presented in the present action involves the amendment to that statute effected by Ch. 90-119, Sec. 40, Laws of Florida. This act added the following language to the statute:
Every insurer shall include a provision in its policy for personal injury protection benefits for binding arbitration of any claims dispute involving medical benefits arising between the insurer and any person providing medical services or supplies if that person has agreed to accept assignment of personal injury protection benefits....
Under Lasky the Court must determine whether this act is reasonably related to a legitimate legislative objective. The act requires a contest between a medical provider-assignee and an insurer to be resolved by arbitration while those between an insured and insurer may be resolved in court. In other words, the act allows access to the court for claims for or against the insured, but denies it for claims for or against the medical provider. It is readily apparent that the objective of the act is to deny the right to litigate certain legitimate claims in court based on who owns the claim. Given the people's right to redress wrongs in court provided by Article I, Section 21, Florida Constitution, such an objective cannot be considered a legitimate one. Therefore, the act violates the parties' substantive due process rights under Article I, Section 9, of the Florida Constitution.[1]
For the forgoing reasons, Chapter 90-119, Section 42, Laws of Florida codified in section 627.736(5), Florida Statutes, is hereby declared unconstitutional and unenforceable as being in violation of the due process provision of the Florida Constitution. Accordingly, Delta's request to order Pinnacle's claim to binding arbitration is denied.
In its order, the county court relied on Lasky v. State Farm Ins. Co., 296 So.2d 9 (Fla.1974). In Lasky, the supreme court held that a party challenging the constitutionality of a statute has the burden of proving that it is invalid. As the Lasky court observed, the test used to determine whether a statute is violative of the due process clause "is whether the statute bears a reasonable relation to a permissible legislative objective and is not discriminatory, arbitrary or oppressive." Id. at 15. In order to determine whether the statute bears a reasonable relation to the legislative objectives underlying its enactment, it is necessary to look at those objectives. Id. In doing so, a court should focus on whether the means chosen are constitutional rather than the legislature's wisdom in choosing the means used or whether the chosen means will accomplish the intended goals. Id. at 15-16.
Conceding that there is an absence of legislative history pertaining to section 627.736(5), appellants contend that the legislature's dual classification scheme, consisting of the insured, who is allowed to sue the insurance company in court, and the medical providers accepting an assignment of benefits, who are provided the reasonable alternative *324 of arbitration, a common and widelyaccepted method of dispute resolution, nevertheless bears a reasonable relation to the permissible legislative objectives of regulating the insurance industry and of reducing congestion in the court system, scheduling delays and automobile insurance premiums.
Appellants further contend that the legislature's abolishment of the medical providers' common law or statutory right of access to courts for redress of a particular injury is proper because it provided them with the reasonable alternative of arbitrating their disputes. See Kluger v. White, 281 So.2d 1 (Fla.1973) (legislature is without power to abolish common law or statutory[2] right of access to courts without providing a reasonable alternative to protect peoples' rights unless it can show overpowering public necessity for doing so and no alternative method of meeting such public necessity can be shown). Moreover, voluntary arbitration is a favored means of resolving disputes. State Farm Mut. Aut. Ins. Co. v. Gonnella, 677 So.2d 1355, n. 2 (Fla. 5th DCA 1996) [relying on Roe v. Amica Mut. Ins. Co., 533 So.2d 279 (Fla.1988)]. Appellants contend finally that the legislative scheme does not preclude the medical provider from suing the insured.
Appellants rely on Dealers Ins. Co., Inc. v. Jon Hall Chevrolet Co., Inc., 547 So.2d 325 (Fla. 5th DCA 1989). In that case, this court declared section 627.7405, Florida Statutes (1985) to be constitutional. That statute required that an owner or insurer of a commercial vehicle reimburse a personal injury protection carrier which had paid benefits to its insured under a private passenger automobile policy. This court rejected the argument that the statute was violative of the state and federal equal protection clauses because it discriminated against commercial vehicle owners and insurers, regardless of fault, and favored noncommercial or personal vehicle owners and insurers. Observing that the legislature has broad discretion to regulate the insurance industry, it found that the legislative classification was reasonable and nonarbitrary because it properly allocated insurance risks and the burden of increased premiums to the party who was better able to absorb those coststhe commercial vehicle owner for whom payment of personal injury protection premiums was merely a known cost of doing business. It reasoned that if the personal injury protection carrier, rather than the commercial vehicle owner and insurer, was required to bear the financial burden of paying for injuries and damages incurred in an accident involving a commercial vehicle, individual personal injury protection costs would escalate. Accordingly, this court concluded that the statute bore a reasonable relation to the legitimate state interest of insurance regulation.
Appellees, medical providers, contend in response that section 627.736(5) is unconstitutional because it improperly discriminates between two classes of similarly situated litigantsmedical providers and everyone else. Specifically, it requires medical providers to forfeit those safeguards traditionally afforded to those who litigate their disputes in court. See A.G. Edwards & Sons, Inc. v. Petrucci, 525 So.2d 918 (Fla. 2d DCA 1988); Affiliated Marketing, Inc. v. Dyco Chemicals & Coatings, Inc., 340 So.2d 1240 (Fla. 2d DCA 1976), cert. den., 353 So.2d 675 (Fla. 1977). Those safeguards include the right to 1) discovery; 2) have the evidence weighed in accordance with well established legal principles; and 3) judicial review. Appellees maintain that these safeguards are protected by the due process clause of the Constitution of the State of Florida.
Appellees contend further that the mandatory binding arbitration procedure in section 627.736(5) is unconstitutional because they were not a party to the agreements compelling arbitration. Section 627.736(5) provides that the provisions of chapter 682 are applicable. Section 682.02, Florida Statutes (1995) provides in part:
682.02 Arbitration agreements made valid, irrevocable, and enforceable; scope.Two or more parties may agree in writing to submit to arbitration any controversy existing between them at the time of *325 the agreement, or they may include in a written contract a provision for the settlement by arbitration of any controversy thereafter arising between them relating to such contract or the failure or refusal to perform the whole or any part thereof....
Appellees contend that section 682.02 is inapplicable because it does not provide that the parties may agree to binding arbitration of a third party assignee's contractual rights. Additionally, an agreement to arbitrate is only binding upon the parties to the agreement. It is not binding upon successors in interest.[3]
In Orion, a case directly on point, the court recently decided the issue on appeal. The court's reasoning is set forth as follows:
Magnetic [medical provider] attempts to escape the dictates of section 627.736(5) by challenging the constitutionality of that statute. We find no merit in Magnetic's constitutional arguments for three reasons. First, Magnetic has not served the Attorney General with a copy of its complaint as required by the Florida Statutes. See § 86.091, Fla. Stat. (1995); Buckley v. City of Miami Beach, 559 So.2d 310, 312 (Fla. 3d DCA 1990)("At the outset, the Court notes that if Buckley seeks to declare the statute facially invalid, her pleadings are deficient as she has failed to join the Attorney General or give notice to his office in the manner required by law.").
Second, the No-Fault statutes do not affect Magnetic's access to courts and cannot therefore be challenged on the grounds that they deny access to courts. This is so because the statutory arbitration provisions do not come into play until a medical service provider voluntarily accepts an assignment of benefits and attempts to assert claims under the insurance policy and the No-Fault scheme may be avoided by refusing to do so.
Third, the statutory No-Fault regime provides medical service providers like Magnetic with the ability to collect via assignment statutorily mandated PIP insurance benefits. In this view, Section 627.736(5) creates new rights and may not be challenged as taking away any existing rights which predate the state constitution. See Chrysler Corp. v. Pitsirelos, 689 So.2d 1132 (Fla. 4th DCA 1997). In short, the statute validly and clearly compels arbitration in this case.
Orion, 696 So.2d at 477. See Omni Ins. Co. v. Special Care Clinic, Inc., 708 So.2d 314, 23 Fla. L. Weekly D714 (Fla. 2d DCA 1998); Southeast Diagnostic Services v. State Farm Mut. Auto. Ins. Co., 697 So.2d 988 (Fla. 4th DCA 1997); Union American Ins. Co. v. U.S.A. Diagnostics, Inc., 697 So.2d 560 (Fla. 3d DCA 1997); Liberty Mut. Ins. Co. v. Magnetic Imaging Systems I Ltd., 696 So.2d 1302 (Fla. 3d DCA 1997).
We disagree with the reasoning in Orion. We agree with the county court below that the compulsory arbitration clause in section 627.736(5), Florida Statutes (1995) violates the due process rights guaranteed to medical providers under Article I, Section 9 of the Florida Constitution.
Under Lasky, the trial court must determine whether an act is reasonably related to a legitimate legislative objective and whether the act is discriminatory, arbitrary and oppressive. It is readily apparent that the statute here is arbitrary and discriminatory. The statute permits the insured, who claims personal injury protection benefits, to sue the insurer in court. However, if the insured assigns the claim to the medical provider, any dispute concerning the assigned claim must be submitted to arbitration and the medical provider is denied access to court. The identity of the owner of the claim is therefore the sole basis for granting or denying access to a court to resolve the identical dispute. There is no valid reason to single out medical providers and to deny them court access in this manner. Other parties enjoy the privilege of agreeing to arbitrate voluntarily. See § 682.02. Medical providers alone are subject to compulsory arbitration. If the *326 legislative objective is to reduce court congestion, that objective cannot be achieved in such a clearly arbitrary and discriminatory manner.
The medical provider's voluntary acceptance of an assignment of benefits does not mean that it voluntarily agrees to arbitrate. The arbitration requirement does not originate in any contractual agreement of the medical provider; it is imposed on the provider by statutory fiat. The compulsory nature of the arbitration requirement is not altered by pointing to the medical provider's option to reject assignments from insureds. Acceptance of such assignments may well be an economic necessity for the medical provider to engage in medical practice.
Appellees also raise an additional argument which was not raised in Orion. Specifically, they contend that section 627.736(5) penalizes medical providers compelled to arbitration because it substitutes the prevailing party standard for obtaining attorney's fees in place of section 627.428(1), Florida Statutes (1995) which controls attorney's fees awards in litigation between insurance companies and their insureds in court. That statute provides:
627.428 Attorney's fee.
(1) Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.
Appellees correctly contend that the purpose of the foregoing statute is to discourage insurance companies from contesting valid claims and to reimburse successful insureds for those attorney's fees incurred when compelled to defend or sue to enforce their insurance contracts. Insurance Co. of North America v. Lexow, 602 So.2d 528 (Fla.1992). See State Farm Fire & Cas. Co. v. Palma, 629 So.2d 830 (Fla.1993).
We agree that section 627.736(5) arbitrarily discriminates against medical providers by subjecting them to a prevailing party test of attorney's fee recovery when insureds enjoy the benefits of section 627.428(1).
Accordingly, the county courts' orders denying appellants' motions to compel arbitration and declaring the compelled arbitration clause in section 627.736(5), Florida Statutes (1995) to violate Article I, Section 9 of the Florida Constitution are affirmed.
AFFIRMED.
GRIFFIN, C.J., and W. SHARP, GOSHORN, PETERSON, THOMPSON and ANTOON, JJ., concur.
HARRIS, J., dissents with opinion, in which COBB, J., concurs.
HARRIS, Judge, dissenting.
I respectfully dissent.
The majority acknowledges conflict with Orion Insurance Company v. Magnetic Imaging Systems, 696 So.2d 475 (Fla. 3d DCA 1997), which specifically upheld the constitutionality of the statute involved in this action because the required binding arbitration does not come into play unless and until the provider voluntarily accepts assignment of the patient's claim against the insurer. By seeking payment under the policy, the provider is bound by the provisions thereof and by the legislation affecting it. But the majority herein asserts that the legislature lacks the constitutional authority, under any circumstance, to require that insurance contracts include mandatory arbitration of third-party PIP claims because of our access to courts provision.
In addition to Orion in this state, a majority of the other states with similar access to courts provisions in their constitutions have also upheld the legislature's authority, usually on the basis of a strong public policy of fostering arbitration as a quicker, less expensive alternative to litigation. Florida also considers arbitration a favored means of dispute resolution. Roe v. Amica Mutual Insurance Co. v. 533 So.2d 279 (Fla. 1988).
*327 The Colorado legislature also mandated binding arbitration relating to PIP benefits. The Colorado Supreme Court in State Farm Mutual Automobile Insurance Co. v. Broadnax, 827 P.2d 531, 535-37 (Colo. 1992), upheld the legislation by liberally, and not literally[1] construing its access to courts provision:
In Colorado, the access to courts provision guarantees that courts will be available to effectuate rights that accrue under law.... This court has stated that "[g]enerally, a burden on a party's right to access to the courts will be upheld so long as it is reasonable...." In examining initial access to courts, we are in essence examining access to the formal judicial process.
* * * * * *
In determining whether this dispute resolution scheme secures State Farm's right to access to the judicial process, we are guided by the requirements of due process. The United States Supreme Court has consistently held that due process requires some form of hearingthe opportunity to be heard at a meaningful time, and in a meaningful manner. (Citation omitted.)
Under the statutory scheme, State Farm clearly has the right to a hearing in which State Farm can present all the evidence, and raise all the defenses available to it. State Farm also has the right to resort to the formal judicial system should it find an arbitrator's order adverse to its interest. We thus conclude that State Farm is not deprived of its access to the judicial process under the Colorado Constitution.
Colorado thus held that its access to courts provision merely guaranteed that courts will be available to effectuate rights that accrue under the law and that reasonable burdens on that right will be upheld. Arbitration, so long as due process is providedadequate notice and the opportunity to be heard at a meaningful timewas held to be valid burden on its access to courts requirement.
Federal courts, although not faced with an access to courts provision, nevertheless agree that binding arbitration, properly structured, meets due process requirements. Republic Industries, Inc. v. Teamsters Joint Council, 718 F.2d 628, 640 (4th Cir. 1983) (it is too late in the day to argue that compulsory arbitration, per se, denies due process of law.... Congress may require arbitration so long as fair procedures are provided and ultimate judicial review is available), also Textile Workers Pension Fund v. Standard Dye & Co., 725 F.2d 843, 855(2d Cir. 1984) (where a party "may come to a district court to enforce, vacate or modify an arbitrator's award, [the party] is not denied meaningful access to the courts").
Since our arbitration code does not require de novo review, does it provide adequate protection in order to satisfy our access to courts provision? The Connecticut Supreme Court spoke to the issue of de novo review of an arbitrator's decision in Chmielewski v. Aetna, 218 Conn. 646, 591 A.2d 101, 109 (1991):
To subject factual findings made by arbitrators.... to de novo review by the court would, in many cases, make those proceedings merely way stations to the courts, and would thereby create the very risks that the compulsory arbitration provision was designed to avoid.
A clause in an insurance policy granting de novo review of an arbitration award [not provided for in the legislation] was held to violate the Colorado public policy favoring fair, adequate and timely resolution of uninsured motorist claims by rendering arbitration a less effective means of dispute resolution. Huizar v. Allstate, 952 P.2d 342, 349 (Colo. 1998).
The supreme court of New Mexico in Board of Education v. Harrell, 118 N.M. 470, 882 P.2d 511 (N.M. 1994), held that compulsory arbitration did not violate its access to courts provision so long as the arbitration award is not arbitrary, unlawful, unreasonable, capricious, and is supported by substantial evidence. I believe this is also the Florida *328 standard. Under our arbitration code (Chapter 682), the arbitrator's award should not be confirmed by the trial court if grounds are established to either vacate or modify the award. Although the fact that the award is not supported by substantial evidence is not specifically listed as an appropriate ground for vacating an award, the fact that the arbitrator conducted the hearing contrary to the provisions of section 682.06 and prejudiced the rights of a party is specifically listed. Section 682.06 provides that the arbitrators shall decide the case "on the evidence produced." Since the legislature has mandated an evidentiary hearing in arbitration cases, it is inconceivable that if the arbitrator was to make an award without evidentiary support that it would be upheld by the court. If the arbitration code permits such a result, I agree that it is unconstitutional as applied to binding arbitration of PIP benefits.
Appeals are provided by the Arbitration Code from an order confirming or denying confirmation of an award, and order modifying or correcting an award, or from a judgment or decree entered pursuant to the arbitration code. Thus, under our arbitration code, a litigant is entitled to notice, an opportunity to be heard at a reasonable time, formal review by a trial court before the award is confirmed, and an appeal to an appellate court. Assuming the appeal is adequate, this meets our access to courts requirement.
Our supreme court in Schnurmacher Holding, Inc. v. Noriega, 542 So.2d 1327 (Fla. 1989), announced a narrow review of arbitration awards by limiting review to those grounds provided in the code. But one of those grounds is "(d) the arbitrator refuses to hear evidence material to the controversy." In my view, this means more than merely requiring an arbitrator to listen to sounds emanating from the mouth of a witness. Although the arbitrator may give the evidence such weight as he or she believes it deserves (as may a trial judge or a hearing officer), the evidence presented must be fairly considered. The limited review announced in Noriega is justified because the parties agreed to it:
The reason for the high degree of conclusiveness which attaches to an award made by arbitrators is that the parties have by agreement substituted a tribunal of their own choosing for the one provided and established by law, to the end that the expense usually incurred by litigation may be avoided and the cause speedily and finally determined.
Noriega, 542 So.2d at 1328.
In our case, even recognizing that the provider "agrees" to binding arbitration by accepting the assignment from the insured, still we can not ignore the fact that the state has compelled this "agreement" if the assignment is accepted. Therefore, due process must prevail. To hold that one who accepts assignments must yield to a decision made without any evidentiary support is no better than requiring such person to submit to a resolution decided by the flip of a coin. A decision made by the flip of a coin is also a quick and inexpensive method of dispute resolution. And while litigants may agree to resolve their dispute even in this manner, certainly the legislature cannot constitutionally require it. Subsection (d) above must therefore authorize relief if there is no evidence to support an award in order to provide due process to providers who accept assignments.
Because I believe, at least in so far as binding arbitration of assigned PIP benefits is concerned, that the lack of evidence to support the award is a ground for denying confirmation of an arbitration award, I would find that the code provides adequate due process protection to the litigants. And because the legislature has the constitutional authority to require binding arbitration of third-party claims to PIP benefits so long as the procedure provides adequate due process protection, I would hold section 627.736(5) constitutional.
Our conflict with Orion should be certified to the supreme court.
COBB, J., concurs.
NOTES
[1] Those constitutional provisions cited by the court provide:

SECTION 9. Due process.No person shall be deprived of life, liberty or property without due process of law, or be twice put in jeopardy for the same offense, or be compelled in any criminal matter to be a witness against himself.
* * * * * *
SECTION 21. Access to courts.The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay.
FLA. CONST. ART. I, §§ 9, 21.
[2] The statutory right must predate the adoption of the Declaration of Rights of the Constitution of the State of Florida. Id. at 4.
[3] In Orion Ins. Co. v. Magnetic Imaging Systems I, 696 So.2d 475 (Fla. 3d DCA 1997), the court held that a medical service provider was a third-party beneficiary of an insurance contract between the insured and the insurance company and that it was bound by an arbitration provision in the contract. In our cases, however, the insurance contracts between the insureds and their insurance companies are not in the record.
[1] A literal interpretation of the access to courts provision would preclude such dispute resolution mechanisms presently employed to resolve unemployment appeals, workman's compensation claims, and license revocations. If the constitution requires that factual disputes must be resolved in the first instance by judges, then binding arbitrations as well as agency remedies must go by the board.